**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-22333-ALTMAN/Lett**

**AMERICAN TUGS, INCORPORATED**,

*Plaintiff*,

*v.*

**3HD SUPPLY, LLC**,

*Defendant*.
______________________________________/

# ORDER

Seeking to enforce a money judgment against the Defendant, the Plaintiff has impleaded three third parties, alleging that they're the Defendant's alter egos. Those third parties now move to dismiss, arguing that the Plaintiff has failed to plead sufficient facts to pierce the Defendant's corporate veil. After careful review, we **DENY** the Motion to Dismiss.

## BACKGROUND

### I. Procedural Background

On July 27, 2020, our Plaintiff—American Tugs, Inc. ("American Tugs")—sued the Defendant, 3HD Supply, LLC ("3HD"), "for the recovery of damages pursuant to Defendant's breach of a maritime vessel charter agreement[.]" *Am. Tugs, Inc. v. 3HD Supply, LLC*, 20-cv-23095 (S.D. Fla. July, 27, 2020) (Scola, J.), ECF No. 1. That case was assigned to Judge Scola of our Court. After a bench trial before Judge Scola, American Tugs was awarded "$802,655.99, plus interest[.]" *Id.*, Final Judgment, ECF No. 54 at 1; *see also id.* December 12–13, 2021, Paperless Trial Minutes [ECF Nos. 51–52].

On June 23, 2023, American Tugs initiated this Rule 69 proceeding under FLA. STAT. § 56.29 against 3HD to obtain discovery and collect on that judgment.[1] *See generally* Petition to Obtain Discovery Pursuant to Rule 69 of the Federal Rules of Civil Procedure (the "Petition") [ECF No. 1]. We granted the Plaintiff's Petition, *see* Order Granting Petition to Obtain Post-Judgment Discovery [ECF No. 6], and discovery ensued. On September 22, 2025, American Tugs impleaded three third parties—SVG Group LLC ("SVG"), Humberto Diaz, and Soraya Valero (together, the "Impleaded Defendants"). *See generally* Amended Motion to Commence Proceedings Supplementary and to Implead Third Parties into Proceedings ("Impleader Motion") [ECF No. 32]. According to American Tugs, discovery revealed that "3HD has no assets to satisfy the judgment" and that 3HD "is entirely controlled by SVG and its managing members, Diaz and Valero, who have systematically drained all of the assets and lines of credit of 3HD . . . for their personal use." *Id.* ¶ 11. We subsequently granted the Impleader Motion and permitted American Tugs to begin supplementary proceedings against the Impleaded Defendants as a way of collecting on its judgment against 3HD. *See generally* Order Granting Motion to Implead [ECF No. 33].

On January 28, 2026, American Tugs filed an Impleader Complaint (the "IC") [ECF No. 47] against the Impleaded Defendants, seeking to "pierce the corporate veil of Defendant 3HD Supply LLC [ ] and to recover damages from Impleade[d] Defendants SVG, Diaz, and Valero[.]" IC ¶ 1.

---

[1] "Proceedings supplementary are a procedural mechanism that provides a judgment creditor with means to investigate assets of the judgment debtor that might be used to satisfy a judgment and are governed by Fla. Stat. § 56.29." *Bodywell Nutrition, LLC v. Fortress Sys., LLC*, 846 F. Supp. 2d 1317, 1324 (S.D. Fla. 2012) (Cohn, J.); *see also* FED. R. CIV. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located[.]"). "Under § 56.29, a judgment creditor may implead third parties to expeditiously discover a judgment debtor's assets and subject them to 'a speedy and direct proceeding in the same court in which the judgment was recovered.'" *Bodywell Nutrition*, 846 F. Supp. 2d at 1324 (quoting *ABM Fin. Servs., Inc. v. Express Consol. Inc.*, 2011 WL 915669, at *1 (S.D. Fla. Mar. 16, 2011) (Torres, Mag. J.)). "The typical case is one in which," as here, "the judgment creditor seeks to implead a third party who (allegedly) is the alter ego of the judgment debtor." *Id.* at 1320.

## II. Factual Allegations[2]

The Impleader Complaint alleges that "3HD was and is a shell entity," *id.* ¶ 67, which "was formed in 2013 for the purpose of entering into" the underlying maritime contract with American Tugs (the "Contract"), and which "has not conducted any business other than the Contract[.]" *Id.* ¶ 14. As a shell entity, 3HD doesn't follow corporate formalities—for example, "3HD did not produce annual reports," "did not have bylaws," and "did not keep any corporate records." *Id.* ¶¶ 55–56, 59.

As the only two members of 3HD, Impleaded Defendants Diaz and Valero "had sole control over [ ] 3HD," *id.* ¶ 33, and "commingled their personal funds with the funds of [ ] 3HD," *id.* ¶ 44; *see also id.* ¶ 41 ("Diaz admitted he frequently transferred money between his personal account and the checking account of Defendant 3HD."); *id.* ¶ 43 ("The charges to [3HD's] credit card included numerous personal expenses of Diaz[,] including meals and repairs to his personal luxury vehicle."). As to Impleaded Defendant SVG, it too "commingled the funds of Defendant 3HD with [its own] funds," *id.* ¶ 53, has "common ownership" with 3HD, *id.* ¶ 23, and shares the "same principal address, mailing address, address for the registered-agent, and [ ] addresses [as 3HD,] Diaz[,] and Valero[.]" *Id.* ¶ 22. In sum, Diaz and Valero "formed and used 3HD [and SVG] as their alter ego[s.]" *Id.* ¶ 66.

American Tugs asks us to "pierce the corporate veil of Defendant 3HD" and "subject [the Impleaded Defendants] to Plaintiff's judgment against Defendant 3HD[.]" *Id.* at Prayer for Relief. On February 8, 2026, the Impleaded Defendants moved to dismiss the Impleader Complaint, arguing that it "fails to plead sufficient facts that, even if true, would justify piercing 3HD's corporate veil or

[2] We accept the allegations of the Impleader Complaint [ECF No. 47] as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

imposing alter-ego liability on SVG, Díaz, or Valero." Motion to Dismiss (the "MTD") [ECF No. 48-1] at 10. This Order follows.[3]

## THE LAW

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *ADT LLC v. Skyline Sec. Mgmt., Inc.*, 2026 WL 575122, at *5 (S.D. Fla. Mar. 2, 2026) (Altman, J.) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up). When the motion to dismiss is based on a failure to allege a basis to pierce the corporate veil, "[t]he issue is not whether [the plaintiff] may ultimately prevail on the 'piercing the corporate veil' theory, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579–80 (11th Cir. 1986).

## ANALYSIS

As an initial matter, both parties proceed under the assumption that Florida law applies here. That's probably because 3HD is incorporated in Florida and, "[u]nder Florida's choice-of-law rules, the law of the state of formation applies in determining whether an entity's liability shield is pierced." *Upfitters, L.L.C. v. Brooking*, 2020 WL 954984, at *5 (M.D. Fla. Feb. 27, 2020) (Howard, J.). Our case, however, is a bit different. American Tugs seeks to collect on a judgment that's based on a *maritime*

---

[3] On February 8, 2026, the Plaintiff filed its Response [ECF No. 49]. The Defendant didn't file a reply. *See generally* Docket. The MTD is therefore fully briefed and ripe for adjudication.

contract—in other words, this dispute sounds in admiralty law. And "[t]o determine whether to disregard the corporate form in an admiralty case, we apply federal common law." *Daughtry v. Jenny G. LLC*, 703 F. App'x 883, 886 (11th Cir. 2017); *see also Old Park Invs., Inc. v. The Vessel LEDA*, 2005 WL 3783039, at *4 (S.D. Fla. June 21, 2005) (Moore, J.) (concluding that, where a plaintiff seeks to "pierce the corporate veil in a maritime action . . . the federal common law standard applies"); *N. Tankers (Cyprus) Ltd. v. Backstrom*, 967 F. Supp. 1391, 1398 (D. Conn. 1997) ("As we have previously ruled in this case, federal common law governs plaintiff's veil-piercing claims. While we may import into our decision those principles of state law which we find both persuasive and appropriate to subsume, the applicable federal maritime law is sufficiently clear so as to warrant no reliance on state law.").

Unfortunately, both parties seem to miss this point. *See generally* MTD (relying on Florida law); Response (same). And "[w]here 'the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies.'" *Sizemore v. Zhao*, 2026 WL 962097, at *4 (S.D. Fla. Apr. 9, 2026) (Altman, J.) (quoting *Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012)). So, we'll proceed under both parties' assumption that Florida law applies.[4]

In post-judgment proceedings supplementary, "[w]here the evidence so warrants, the court may order that the corporate veil be pierced and that the corporation's alter ego be made liable for the judgment." *MCI Telecomms. Corp. v. O'Brien Mktg., Inc.*, 913 F. Supp. 1536, 1540 (S.D. Fla. 1995) (Highsmith, J.). The gravamen of the Impleaded Defendants' argument is that the Impleader

[4] This choice-of-law question is ultimately an academic one anyway because "[t]he prerequisites for piercing the corporate veil in federal maritime law are the same as elsewhere." *Popescu v. CMA CGM*, 2009 WL 5606131, at *8 (S.D. Fla. Nov. 5, 2009) (Altonaga, J.), *aff'd*, 384 F. App'x 902 (11th Cir. 2010); *see also Korman v. Party Girl Enters., Inc.*, 2013 WL 12094631, at *2 (S.D. Fla. June 19, 2013) (Hopkins, Mag. J.) ("[T]he Florida and federal common law standards for piercing the corporate veil and holding a shareholder of a corporation personally liable for the acts of the corporation are very similar."), *report and recommendation adopted*, 2013 WL 12094326 (S.D. Fla. Sept. 10, 2013) (Ryskamp, J.); *Aldana v. Fresh Del Monte Produce, Inc.*, 2007 WL 7143959, at *6 (S.D. Fla. Aug. 30, 2007) (Simonton, Mag. J.) (holding that courts in our District "have interpreted Florida law as requiring the same elements that federal common law requires to pierce the corporate veil").

Complaint "consists solely of conclusory statements . . . unsupported by adequate and legally sufficient specific facts, specific transactions or specific misconduct that caused [American Tugs's] loss." MTD at 2; *see also id.* at 3 ("The Plaintiff has conducted paper discovery, took depositions and has still failed to set forth sufficient facts – as opposed to conclusory allegations.").[5] In sum, the Impleader Complaint, our Impleaded Defendants argue, consists of "bare assertions" that "do not meet the strict standard for disregarding corporate separateness and to pierce the veil." *Id.* at 3.

The Plaintiff naturally disagrees. "On a motion to dismiss on a failure to allege a basis to pierce the corporate veil," the Plaintiff writes, "'the issue is not whether [the plaintiff] may ultimately prevail on the piercing the corporate veil theory, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations.'" Response at 5 (quoting *Jackam*, 800 F.2d at 1579). American Tugs says that it's satisfied this standard because the Impleader Complaint alleges that 3HD "was under the sole control of [the] Impleader Defendants," "3HD was undercapitalized," the Impleaded Defendants "commingled their personal funds with the funds of Defendant 3HD," and "3HD did not follow corporate formalities[.]" *Id.* at 2–4. After careful consideration, we agree with American Tugs.

"At the motion to dismiss stage, a plaintiff need only allege facts which support a plausible basis for alter ego as a theory of liability." *Damian v. Yellow Brick Cap. Advisers (UK) Ltd.*, 2019 WL 5887360, at *7 (S.D. Fla. Nov. 12, 2019) (Altonaga, J.); *see also Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, 2010 WL 2652496, at *6 (S.D. Fla. Feb. 26, 2010) (Bloom, J.) ("[Where] complaints [ ] are attacked via motion to dismiss . . . the complaint attempting to pierce the corporate veil 'must

[5] The Impleaded Defendants' emphasis on discovery suggests that we should treat the Motion to Dismiss like a Motion for Summary Judgment. *See Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint. (citing FED. R. CIV. P. 12(b))). But we can't do that. *See Smith v. Miami-Dade Cnty.*, 621 F. App'x 955, 960 (11th Cir. 2015) ("When ruling upon a motion to dismiss, a district court generally may not consider materials outside of the pleadings.").

allege facts sufficient to pierce the corporate veil' of the corporation." (quoting *Aldea Commc'ns, Inc. v. Gardner*, 725 So. 2d 456, 457 (Fla. 2d DCA 1999))). "At the motion to dismiss stage, courts are reluctant to determine the fact intensive question of whether a corporate entity is merely an alter ego to protect an individual defendant from liability." *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2010 WL 1531489, at *12 (S.D. Fla. Apr. 16, 2010) (Cohn, J.).[6]

So, at this early stage of the case, American Tugs must allege that: "(1) the shareholder dominated and controlled the [LLC] to such an extent that the [LLC's] independent existence, was in fact non-existent and the shareholders were in fact alter egos of the [LLC]; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011); *see also see Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984) ("The corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them." (quoting *Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 23 (Fla. 1955))). Still, "[t]here is no uniform standard test . . . for determining whether an alter ego relationship exists, and courts must instead look to the totality of the circumstances." *Eitzen Chem. (Sing.) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 770 (11th Cir. 2018). As we explain below, American Tugs has satisfied all three prongs.

[6] 3HD is a limited-liability company, not a corporation. For our purposes, though, this is a distinction without a difference. "Courts routinely apply the corporate law doctrine of veil piercing to LLCs." *Upfitters*, 2020 WL 954984, at *5 n.6; *Hollowell v. Orleans Reg'l Gen. Hosp. LLC*, 217 F.3d 379, 385 n.7 (5th Cir. 2000) ("Commentators also agree that for purposes of piercing the corporate veil, an LLC would be treated like a corporation."); *TTT Foods Holding Co. LLC v. Namm*, 2017 WL 2901329, at *7 (S.D. Fla. May 19, 2017) (Middlebrooks, J.) ("The veil-piercing doctrine applies to limited liability companies." (citing *XL Vision, LLC. v. Holloway*, 856 So. 2d 1063, 1066 (Fla. 5th DCA 2003))).

## I. Domination and Control

American Tugs seeks to pierce the corporate veil against three parties: two individuals who own Defendant 3HD (Diaz and Valero) and another company those individuals *also* own (SVG). Because Diaz and Valero are differently situated than SVG, we'll consider them first before moving onto SVG.

### a. The Individual Defendants

To satisfy the first prong, American Tugs must plead that 3HD "was dominated and controlled to such an extent it existed as a 'mere instrumentality'" of Diaz and Valero. *Damian*, 2019 WL 5887360, at *8. For two reasons, we find that the Plaintiff has met this burden.

*First*, American Tugs alleges that Diaz and Valero "were the only persons involved in the operation and management of Defendant 3HD and that Diaz and Valero had sole control over Defendant 3HD." IC ¶ 33. And the Impleader Complaint is full of factual allegations that support this position. *See, e.g.*, *id.* ¶ 25 ("The website for the Florida Department of State, Division of Corporations lists Diaz and Valero as the only two members of Defendant 3HD."); *id.* ¶ 28 ("Diaz and Valero testified they are the only managers of Defendant 3HD."); *id.* ¶ 13 (noting that the Florida Department of State website "lists Valero as the registered agent for Defendant 3HD" and identifies the same address for 3HD's "principal address, mailing address, the address for the registered agent, and the addresses for Diaz and Valero"). In fact, according to American Tugs, "Diaz testified that 3HD was formed in 2013 for the purpose of entering into" the maritime Contract with the "Plaintiff that was the subject of the underlying lawsuit" and that "Diaz admitted that Defendant 3HD has not conducted any business other than" the Contract. *Id.* ¶ 14. In other words, 3HD's entire purpose was to contract with our Plaintiff on behalf of Diaz and Valero. Accepting these allegations as true, the Plaintiff has plausibly shown that Diaz and Valero "dominated and controlled" 3HD. *See Ocala Breeders' Sales Co. v. Hialeah, Inc.*, 735 So. 2d 542, 543 (Fla. Dist. Ct. App. 1999) (finding that a corporation was a "mere

instrumentality" where it was "controlled by the same person" and "operated out of the same facilities").

*Second*, "[o]ne important factor relevant to whether an individual dominates the corporation to such an extent as to negate its separate identity is whether corporate funds were used for the individual's benefit." *Eckhardt v. United States*, 463 F. App'x 852, 856 (11th Cir. 2012). American Tugs alleges just that. *See* IC ¶ 41 ("[Diaz] frequently transferred money between his personal account and the checking account of Defendant 3HD."); *ibid.* ("The bank statements produced by Defendant 3HD demonstrate several deposits and withdrawals between the personal bank accounts of [Diaz and Valero] and the business account of Defendant 3HD."); *id.* ¶ 42 ("Diaz opened a credit card in the name of Defendant 3HD in 2021 and the credit limit of $9000 was depleted in five months."); *id.* ¶ 43 (alleging that the 3HD credit card was used to pay for "numerous personal expenses of Diaz including meals and repairs to his personal luxury vehicle"). That's enough at this early stage of the case. *See Walton v. Tomax Corp.*, 632 So. 2d 178, 181 n.2 (Fla. 5th DCA 1994) ("[I]f a corporate officer who is in control of a corporation personally utilizes its assets for payment of personal obligations and generally treats the corporation as a sham, he can be liable on an alter ego theory."); *Eckhardt*, 463 F. App'x at 857 (noting that a defendant's "use of corporate funds for his personal benefit supports the district court's conclusion that [he] dominated and controlled [the corporation] as its alter ego").

In short, the Interpleader Complaint alleges that Diaz and Valero exercised sole control over 3HD, commingled funds with 3HD, and used 3HD to pay personal expenses—which, especially taken together, is sufficient to plausibly allege that 3HD is a "mere instrumentality" of Diaz and Valero. *See Raber v. Osprey Alaska, Inc.*, 187 F.R.D. 675, 679 (M.D. Fla. 1999) (finding the first prong satisfied where the defendant "commingled personal and corporate funds" and had "not complied with corporate requirements").

**b. SVG**

Next, we consider whether American Tugs has sufficiently alleged the first prong as to SVG—3HD's sister corporation.[7] *See* Sister Corporation, Black's Law Dictionary 432 (11th ed. 2019) ("One of two or more corporations controlled by the same, or substantially the same, owners."). "Factors that courts consider when deciding whether to pierce the corporate veil often include, among other things: (1) common directors and officers between corporations; (2) inadequate capitalization; (3) one corporation's use of another corporation's property and assets as its own; (4) informal inter-corporate loan transactions; (5) overlapping decision-making between corporations; (6) failure to observe formal legal requirements; and (7) 'existence of fraud, wrongdoing or injustice to third parties.'" *LIG Ins. Co. v. Inter-Fla. Container Transp., Inc.*, 564 F. App'x 495, 495–96 (11th Cir. 2014) (quoting *Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5th Cir. 1981)). "It is not necessary that the party seeking

[7] This so-called "horizontal veil piercing" isn't so straightforward. *See Drone Nerds Franchising, LLC v. Childress*, 2021 WL 6620674, at *4 (S.D. Fla. Nov. 15, 2021) (Strauss, Mag. J.) ("This case presents a less-common, and legally murkier, scenario – a party (Childress) seeking to hold a corporation (DNI) liable for the actions and debts of its sister or sibling corporation (DNF), termed 'horizontal veil piercing.'"), *report and recommendation adopted*, 2022 WL 196306 (S.D. Fla. Jan. 21, 2022) (Ruiz, J.). In fact, our "Circuit has yet to address whether a corporate veil may be pierced horizontally between sibling corporations under an alter ego theory of liability." *Eitzen Chem.*, 749 F. App'x at 771 n.7. In *Eitzen Chemical*, neither party raised the issue on appeal, and the Circuit thus "assume[d], without deciding, for the purposes of this opinion, that a corporation may be held liable for the debts of a sister corporation and that the same factors applied in the parent-subsidiary context to determine alter ego status apply in the sibling corporation context." *Ibid.* So too here.

Our Impleaded Defendants never mention horizontal veil piercing—much less do they suggest that they cannot be liable for the debts of a sister company. *See generally* MTD. "They've thus forfeited (at least for now) any argument they might have advanced as to that element." *S.W. v. Tropical Paradise Resorts, LLC*, 2026 WL 806786, at *4 (S.D. Fla. Mar. 24, 2026) (Altman, J.) (quoting *Amaya v. Vilsack*, 2024 WL 3509583, at *5 (S.D. Fla. July 23, 2024) (Altman, J.) (cleaned up)); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited]."). We'll therefore assume that "the same factors appl[y] in the parent-subsidiary context to determine alter ego status apply in the sibling corporation context." *Eitzen Chem.*, 749 F. App'x at 771 n.7.

to pierce the corporate veil allege all of the factors, but enough of the factors must exist to indicate the necessary degree of control by one company over the other to constitute an alter ego relationship." *Damian*, 2019 WL 5887360, at *8 (quoting *Eitzen Chem.*, 749 F. App'x at 771) (cleaned up).

Again, we find that American Tugs has met its burden at this stage of the case. As to the first factor (common directors and officers), American Tugs alleges that SVG and 3HD both have Valero as "[t]he registered agent," share the same "business address," "principal address, [ ] mailing address, [and] address for the registered agent," and are wholly owned and controlled by Diaz and Valero. IC ¶¶ 21–23; *see also id.* ¶ 23 ("Defendant 3HD, the other 3HD entities, and Impleader Defendant SVG have common ownership: Impleader Defendants Diaz and Valero."); *id.* ¶ 22 ("[T]he only two members of SVG are Impleader Defendants Diaz and Valero."). Moving onto the second factor (inadequate capitalization), American Tugs has pled that 3HD was woefully undercapitalized. *See id.* ¶ 14 ("3HD did not maintain sufficient capital to cover its debts and obligations, i.e., Defendant 3HD was undercapitalized."). Our Plaintiff also tells us that 3HD's bank statements "showed the balance in the company checking account was consistently below $1,000," "reflect[ed] multiple overdraft fees and late charges," and eventually "showed a negative balance." *Id.* ¶¶ 36–38. In other words, 3HD was undercapitalized. *See MCI Telecomms.*, 913 F. Supp. at 1543 (finding a corporation undercapitalized where it had "approximately $3,000 in cash and $500 in paid-in capital, an amount clearly less than adequate to fund this corporation's capital needs").

As to the third and fourth factors (using the company's "property and assets as its own" and entering into "informal inter-corporate loan transactions"), *LIG Ins. Co.*, 564 F. App'x at 495–96, American Tugs alleges that "[t]he 2021 federal tax return for Defendant 3HD demonstrates that Defendant 'loaned' $32,455 to SVG . . . in 2021," IC ¶ 51, that 3HD made "a payment of $5,000" to SVG, *id.* ¶ 50, that the "Impleader Defendants Diaz and Valero commingled the funds of Defendant 3HD with the funds of Impleader Defendant SVG," *id.* ¶ 53, and that "Diaz admitted that Defendant

3HD did not document loans it made to other companies, including Impleader Defendant SVG," *id.* ¶ 60. All these allegations, taken together, also suggest that 3HD and SVG had "overlapping decision-making," thus satisfying the fifth factor. *See LIG Ins. Co.*, 564 F. App'x at 496 (finding "an overlap in the decision-making authority between the two companies" where the companies were controlled by the same person and used each other's property).

Moving on to our sixth factor (failure to observe formal legal requirements), American Tugs claims that 3HD didn't follow corporate formalities: It didn't "produce annual reports"; "hold regular corporate meetings of its managers"; "keep any corporate records"; "document loans it made to other companies"; or "have articles of incorporation" or "bylaws[.]" IC ¶¶ 55–60. What's more, our Plaintiff alleges that "Diaz admitted Defendant 3HD has no office," "no employees," "no assets," and "no shareholders." *Id.* ¶¶ 29–32. That's enough, at this stage of the litigation, to demonstrate a disregard of corporate formalities. *See LIG Ins. Co.*, 564 F. App'x at 496 (finding that a defendant "ignore[d] corporate formalities" by, among other things, "holding no board meetings"); *Redhawk Med. Prods. & Servs., LLC v. Dolphin Med., LLC*, 2025 WL 4093525, at *1 (N.D. Fla. Dec. 3, 2025) (Wetherell, II, J.) ("Dolphin did not adhere to corporate formalities. It did not hold formal member meetings (or keep minutes of any informal meetings) and it did not have an operating agreement[.]"); *In re Williams*, 1999 WL 33596529, at *3 (Bankr. S.D. Fla. Nov. 1, 1999) (Lessen, Bank. J.) (finding a lack of corporate formalities where there was no evidence that the corporation "was ever capitalized, held a corporate meeting, performed any corporate acts, or had any assets," and where the corporation "failed to file even its first annual corporate report").

That leaves our final factor, "existence of fraud, wrongdoing or injustice to third parties." *LIG Ins. Co.*, 564 F. App'x at 496. Here, American Tugs alleges that "SVG [has] misused Defendant 3HD since its inception, and [ ] continue[s] to misuse the corporate form for improper purposes, i.e. [its] personal enrichment and the avoidance of paying the debt owed to [the] Plaintiff[.]" IC ¶ 62. Accepting

the Impleader Complaint's factual allegations as true (as we must at this stage of the case)—*see Hollard v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) ("[A] court must accept as true all of the [factual] allegations contained in a complaint[.]" (cleaned up))—this allegation is sufficient to establish a "wrongdoing or injustice" to our Plaintiff. *LIG Ins.*, 564 F. App'x at 496; *see also Ocala Breeders'*, 735 So. 2d at 543 (finding the veil-piercing of an impleaded party proper where the defendant "entered into the agreement even though it did not have the ability to fulfill the contract").

In short, by satisfying each of the factors the Eleventh Circuit outlined in *LIG*, our Plaintiff has plausibly alleged that SVG "dominated and controlled" 3HD.

**II. Improper Conduct**

Still, "[m]ere ownership of a corporation by one shareholder is insufficient to pierce the corporate veil." *Eckhardt*, 463 F. App'x at 856. So, we must next consider whether the Impleaded Defendants used 3HD for some "improper purpose." *Molinos Valle*, 633 F.3d at 1349. A plaintiff is "not required to show that the corporation was formed for an improper purpose. Florida law only requires that the corporation be *formed* or *used* for an improper or fraudulent purpose." *Eckhard*, 463 F. App'x at 857. The plaintiff must therefore allege that "the defendant engaged in improper conduct by failing to observe corporate formalities, commingling funds of the corporation with funds of other corporations and with personal funds, using the assets of the corporation for personal use, failing to adequately capitalize the corporation, and using the corporate form to avoid liability." *Omega Psi Phi Fraternity, Inc. v. HCE Grp. of Cos., Inc.*, 2011 WL 13228098, at *3 (S.D. Fla. Oct. 19, 2011) (Ryskamp, J.); *see also Dickinson v. Hoyt*, 2017 WL 3597512, at *3 (N.D. Fla. June 19, 2017) (Rodgers, C.J.) ("Piercing of the corporate veil is warranted when the plaintiff pleads that a corporation is the instrumentality of the defendant and that the defendant engaged in improper conduct by failing to observe corporate formalities by failing to adequately capitalize the corporation, and by using the corporate form to avoid liability."); *In re Chira*, 353 B.R. 693, 736 (Bankr. S.D. Fla. 2006) ("Examples

of improper conduct [include] . . . the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not established in good faith or, in general, that property belonging to the corporation can be traced into the hands of the stockholders."), *aff'd*, 378 B.R. 698 (S.D. Fla. 2007), *aff'd*, 567 F.3d 1307 (11th Cir. 2009). American Tugs has alleged all that.

As we've explained, the Impleader Complaint sufficiently alleges that 3HD didn't observe corporate formalities, was woefully undercapitalized, and that the Impleaded Defendants improperly intermingled their finances with 3HD's. *See* I.b.; IC ¶ 14 ("3HD did not maintain sufficient capital to cover its debts and obligations, i.e., Defendant 3HD was undercapitalized."); *id.* ¶¶ 36–38 (alleging that 3HD's bank statements "showed the balance in the company checking account was consistently below $1,000," "reflect[ed] multiple overdraft fees and late charges," and "showed a negative balance").

American Tugs has likewise shown that the Defendants intermingled their personal funds with 3HD's corporate funds. The Plaintiff claims that 3HD's bank statements "demonstrate several deposits and withdrawals between the personal bank accounts of [Diaz and Valero] and the business account of Defendant 3HD." IC ¶ 41. Those bank statements also apparently show that Diaz "frequently transferred money between his personal account and the checking account of Defendant 3HD." *Ibid.* In fact, according to the Plaintiff, "Diaz opened a credit card in the name of Defendant 3HD in 2021 and the credit limit of $9000 was depleted in five months," *id.* ¶ 42, from "numerous personal expenses of Diaz including meals and repairs to his personal luxury vehicle," *id.* ¶ 43. Plus, as we've detailed, American Tugs alleges that 3HD intermingled funds with SVG. *See supra* I.b; *see also* IC ¶ 51 ("The 2021 federal tax return for Defendant 3HD demonstrates that Defendant 'loaned' $32,455 to SVG . . . in 2021. Diaz confirmed the loan in his deposition."); *id.* ¶ 50 (alleging that 3HD made "a payment of $5,000" to SVG); *id.* ¶ 53 ("Impleader Defendants Diaz and Valero commingled

the funds of Defendant 3HD with the funds of Impleader Defendant SVG."); *id.* ¶ 60 ("During his deposition, Diaz admitted that Defendant 3HD did not document loans it made to other companies, including Impleader Defendant SVG."). This is also sufficient to show an improper purpose. *See Lokey v. F.D.I.C.*, 608 F. App'x 736, 738 (11th Cir. 2015) ("LLC members abuse the corporation's form if they conduct their personal and LLC business as if they were one by commingling the two on an interchangeable or joint basis or confusing otherwise separate properties, records, or control[.]"); *In re Chira*, 353 B.R. at 736 ("Examples of improper conduct [include] . . . the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not established in good faith or, in general, that property belonging to the corporation can be traced into the hands of the stockholders."); *Omega Psi Phi Fraternity*, 2011 WL 13228098, at *3 (holding that "the defendant engaged in improper conduct by . . . commingling funds of the corporation with funds of other corporations and with personal funds, [and] using the assets of the corporation for personal use").

Finally, according to American Tugs, Diaz "testified that 3HD was formed in 2013 for the purpose of entering into [ ] the Contract with [American Tugs] that was the subject of the underlying lawsuit" and that "Defendant 3HD has not conducted any business other than the Contract[.]" IC ¶ 14. In other words, American Tugs is saying that, although 3HD was formed solely for the purpose of entering into the Contract, it had no ability to pay the liability it was incurring under that Contract. And Florida courts routinely find an improper purpose where a party "entered into the agreement even though it did not have the ability to fulfill the contract." *Ocala Breeders'*, 735 So. 2d at 543–44; *see also Triton Container Int'l Ltd. v. Cosvogiannis*, 2005 WL 8154983, at *2 (S.D. Fla. Oct. 13, 2005) (Bloom, J.) ("Undercapitalizing a corporation for a contractual commitment may provide evidence of such wrongful purpose."); *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. Dist. Ct. App. 2000) (holding that "an

unlawful or improper purpose" includes using the corporation "as a subterfuge to mislead or defraud creditors" or "to hide assets").

Against all this, the Impleaded Defendants raise two objections—both meritless. *First*, they claim that "[t]here are no allegations of transfers of money or resources between these entities and the judgment debtor," MTD at 6, and that "[t]here is no allegation that 3HD transferred funds to SVG, Diaz or Valero," *id.* at 8. But that's just not true. As we've highlighted, the Impleader Complaint specifically advances these very allegations. *See* IC ¶ 51 ("The 2021 federal tax return for Defendant 3HD demonstrates that Defendant 'loaned' $32,455 to SVG . . . in 2021. Diaz confirmed the loan in his deposition."); *id.* ¶ 50 (alleging that 3HD made "a payment of $5,000" to SVG); *id.* ¶ 53 ("Impleader Defendants Diaz and Valero commingled the funds of Defendant 3HD with the funds of Impleader Defendant SVG."); *id.* ¶ 60 ("During his deposition, Diaz admitted that Defendant 3HD did not document loans it made to other companies, including Impleader Defendant SVG."); *id.* ¶ 41 (alleging that 3HD's bank statements "demonstrate several deposits and withdrawals between the personal bank accounts of [Diaz and Valero] and the business account of Defendant 3HD"); *id.* ¶¶ 42–43 ("Diaz opened a credit card in the name of Defendant 3HD in 2021 and the credit limit of $9000 was depleted in five months" because of "numerous personal expenses of Diaz including meals and repairs to his personal luxury vehicle."); *id.* ¶ 41 (alleging that Diaz "frequently transferred money between his personal account and the checking account of Defendant 3HD").

*Second*, they characterize the Impleader Complaint as "merely recit[ing] statutory buzzwords," "offer[ing] vague non-specific allegations," and "ask[ing] the Court to draw conclusions which are not supported by specific facts." MTD at 9. They insist that "sole control" of 3HD "does not mean anything improper was done." *Id.* at 6. In doing so, they liken our case to *Oginsky v. Paragon Props. of Costa Rica LLC*, *see* MTD at 9–10, where the plaintiffs "only alleged that [the individual defendant] owns and operates or is the president of [the corporate entity]." 784 F. Supp. 2d 1353, 1373 (S.D. Fla.

2011) (King, J.). Those allegations, the district court held there, did "not explain how Defendants allegedly abused the corporate form, such that they should be held personally liable." *Id.* at 1373–74.

But our case is nothing like *Oginsky*, where the plaintiffs stopped at ownership and control. Here, as we've said, the Impleader Complaint alleges—in addition to common ownership and operations—a disregard of corporate formalities, undercapitalization, commingling of personal and corporate funds, the use of corporate funds for personal expenses, and the inability to pay debts as they came due. *Cf. James Dar, LLC v. OJ Commerce.com, Inc.*, 2022 WL 18463415, at *4 (S.D. Fla. Dec. 22, 2022) (Smith, J.) (rejecting the argument that the plaintiff had "only pled conclusions, not facts," where the complaint alleged, among other things, "that Defendants were characterized by a unity of interest in ownership and control; that one of the Defendants completely controlled, dominated, managed, and operated the other Defendant; that Defendants share the same physical address, share the same mailing address, and utilize and control the same website; that Defendants share the same founder; that Defendants share some or all of the same officers and employees; that Defendants share the same user domain and root domain; that in emails both Defendants used the same signature line and footer without any indication as to which entity the emails were coming from; and that Defendants intermingled assets to suit their convenience"); *Omega Psi Phi Fraternity*, 2011 WL 13228098, at *3 (holding that "the defendant engaged in improper conduct by failing to observe corporate formalities, commingling funds of the corporation with funds of other corporations and with personal funds, using the assets of the corporation for personal use, failing to adequately capitalize the corporation, and using the corporate form to avoid liability"); *Morris v. Bischoff*, 1997 WL 128114, at *8 (M.D. Fla. Mar. 4, 1997) (Kovachevich, J.) (holding that the "allegations are sufficient to satisfy the pleading requirements as to the issue of piercing the corporate veil," where the complaint alleged that the defendant "engaged in such improper conduct as: failing to observe corporate formalities; commingling the funds of the corporations with the funds of other corporations and with his own

funds; using the assets of the corporations for his own personal use; failing to adequately capitalize the corporations; and using the corporate form to avoid liability"). Our Plaintiff, in short, has done more than enough to proceed.

### III. Causation

That leaves causation. The Impleaded Defendants repeatedly fault American Tugs for failing to explain how the alleged misuse of 3HD's corporate form caused the Plaintiff any injury. *See, e.g.*, MTD at 7 ("The Plaintiff failed to allege that the transfers [between the Impleaded Defendants and 3HD] harmed or caused injury to the judgment creditor."); *ibid.* ("Plaintiff fails to meet the pleading standard to show harm and injury caused by the non-specific allegations."); *id.* at 8 ("Plaintiffs do not allege how any of these allege in fraudulent or improper uses of the corporate form caused injury to the plaintiff."); *id.* at 9 ("Plaintiffs have not alleged any facts which can reasonably support the allegation that plaintiff was harmed by any of the alleged failure to comply with corporate formalities."). But the Defendants are able to make this argument only by taking each of the Plaintiff's allegations in isolation.

Reading the Interpleader Complaint fairly, though, we think the Plaintiff's theory of the case is straightforward: The Impleaded Defendants, the Plaintiff says, improperly used their control over 3HD, commingled its funds, diverted its assets for personal and affiliated purposes, and left 3HD without sufficient assets to satisfy its obligations under its Contract with American Tugs. *See* IC ¶ 63 ("Plaintiff [American Tugs] was damaged by the actions of the Impleade[d] Defendants in that Defendant 3HD . . . is unable to fulfill its legal obligation to pay the judgment entered by this Court."). And the law is well-settled that "[i]mproper use of the corporate form causes injury to corporate creditors when it prevents the collection of outstanding debts." *TTT Foods Holding Co. LLC v. Namm*, 2017 WL 2901329, at *10 (S.D. Fla. May 19, 2017) (Middlebrooks, J.); *Prams Water Shipping, Co. v. Batca Glob., A.S.*, 2016 WL 10951795, at *2 (S.D. Fla. Dec. 16, 2016) (Goodman, Mag. J.) (finding injury to

the plaintiff where the defendant "us[ed] the corporate . . . to evade contractual or tort responsibility"), *report and recommendation adopted*, 2018 WL 1093475 (S.D. Fla. Jan. 3, 2018) (Lenard, J.); *MontVerde Produce, Inc. v. Hialeah Tomatoes & Fresh Produce, Inc.*, 2024 WL 4003718, at *3 (S.D. Fla. July 31, 2024) (Williams, J.) (finding causation and injury where the corporations "were used to mislead [the creditor] and evade [the] Defendant['s] [debt] obligation"); *Ocala Breeders' Sales*, 735 So. 2d at 543–44 (finding causation and injury where a party "entered into the agreement even though it did not have the ability to fulfill the contract"). For now, then, American Tugs has plausibly alleged the element of causation.

## CONCLUSION

After careful review, therefore, we **DENY** the Impleaded Defendants' Motion to Dismiss [ECF No. 48].

**DONE AND ORDERED** in the Southern District of Florida on September 8, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record